**SLOAN OIL & GAS CO. v. JONES, Collector of Internal Revenue.**

**Civ. No. 3537.**

United States District Court
W. D. Oklahoma.

March 11, 1949.

Breckinridge & Boone, Tulsa, Okl., Savage, Gibson & Benefield, Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., for defendant.

CHANDLER, District Judge.

This cause came on for trial and the Court having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. That the plaintiff paid the tax and filed a proper claim for refund as alleged in its complaint.

2. That the Sloan Oil & Gas Co. is a corporation organized under the laws of the State of Delaware in 1933. Its name was originally Blackstone Oil & Gas Co., later changed to Bradshaw Oil & Gas Co., and in July, 1941, its name was changed to Sloan Oil & Gas Co.

3. That in 1938, all of the stock of Sloan Oil & Gas Co. was owned by the International Supply Company of Tulsa, Oklahoma, with the exception of some very small minority interests. At that time James W. Sloan was president of the International Supply Company and its largest stockholder.

4. That in February of 1938, James W. Sloan died and Mrs. James W. Sloan and A. F. Bourne became co-administrators of the estate of James W. Sloan. In addition to the stock of International Supply Company owned by the Sloan estate, it had considerable other interests and Mrs. James W. Sloan and A. F. Bourne, as co-administrators, were active in managing the affairs of the estate.

5. That shortly after the death of James W. Sloan, in 1938, the stockholders of International Supply Company entered into negotiations to dispose of that company, and certain negotiations then ensued between the administrators of the estate of James W. Sloan and the minority stockholders of International Supply Company. These negotiations extended over a period of several months, and at this conclusion,

352

a deal was finally consummated whereby the Sloan estate acquired all of the stock of the then Bradshaw Oil & Gas Co., which thereafter became the Sloan Oil & Gas Co., as a result of corporate name change.

6. Mrs. James W. Sloan carried on all of these negotiations with the assistance of her attorney and the co-administrator of the estate, and after an offer had been received which was acceptable to her co-administrator and to her attorney, she declined to accept that offer from the minority stockholders and continued the negotiations. As a result of this further effort, she was able to secure for the estate $125,000 additional.

7. That in January, 1939, Mrs. James W. Sloan became a member of the board of directors and vice president of the Sloan Oil & Gas Co., and in December, 1939, she became president of said company and has been president thereof, continuously, since that date.

8. That the estate of James W. Sloan was closed in June, 1941, and Mrs. James W. Sloan received a fee from the estate as allowed by the County Court, in the sum of $17,500 for her services as co-administrator.

9. During the time all of the stock of Sloan Oil & Gas Co. was in the estate, and while it constituted the most valuable asset in the estate, Mrs. James W. Sloan was primarily concerned with the management and operation of that company. That in June, 1941, after the closing of the estate, the board of directors of Sloan Oil & Gas Co. made an investigation of what would be a fair and reasonable salary for the president of the company, and after considerable investigation carried on by at least two members of the board, it was determined that the salary of Mrs. Sloan as president of the company should be $900 per month, or $10,800 per year.

10. That during the years 1942 and 1943, the Sloan Oil & Gas Co. had 42 producing wells on approximately 800 acres of leases in the Pampa district of West Texas. That four wells had been drilled in 1941, the other wells having been drilled prior to that date. That in 1944 one additional well was drilled, and an additional well was drilled in 1945, and two additional wells were drilled in each of the years 1946 and 1947. That during the year 1942 Sloan Oil & Gas Co. produced 240,-122 barrels of oil and had a gross income of $258,015.24, with a net income, after salaries and before depletion, of $211,919.-59, and that in 1943, Sloan Oil & Gas Co. produced 261,297.51 barrels of oil and had a gross income of $292,502.29, with a net income after salaries and before depletion, of $242,230.62.

11. That during the years 1942, 1943, 1944 and 1945, it was necessary for, and Mrs. James W. Sloan did go to West Texas at least once each month for the purpose of transacting business of the company out in the field, and that on these trips she spent from five to seven days. While in the field she would spend considerable time checking into various problems confronting the company, particularly in the way of production, securing equipment and supplies, and conferring with other operators in the field concerning common problems. During the years 1942, 1943, 1944 and 1945, on account of war conditions, it was somewhat difficult to secure sufficient equipment and it required a great deal of the time of the president of the company in working out different problems.

12. That in the latter part of 1942, or in January, 1943, negotiations were started for the purpose of working out a repressuring program in the field where all the producing wells of the Sloan Oil & Gas Co. were located, and Mrs. Sloan, during this year, spent a great deal of time in working on this program and consulting with other operators in the field, with various geologists and engineers, as well as members of her own board of directors. That this work continued through 1944 and 1945, and finally the repressuring was consummated among the various operators in the field and actually got under way in 1946, and has increased the company's production since that time.

13. That Mrs. Sloan, as president of the company, was in the office of the company in Tulsa, Oklahoma, most every day while she was in Tulsa, and, in addition thereto, spent considerable time conferring with her attorney, accountant, and various geologists and engineers and other persons qualified in the oil business, in Tulsa, and at all times during the years 1942, 1943, 1944 and 1945, was the active, responsible executive officer of the company, performing all of the usual and customary duties performed by the president of a corporation.

14. That Mrs. James W. Sloan owned three-fifteenths of the stock of the Sloan Oil & Gas Co. during the years under consideration and the other stock was owned by her five daughters, or was in trust for them, and by her stepson, John W. Sloan, who was vice president of the company in charge of its field operations, and who in the years 1942 and 1943, drew a salary of $6600 a year. A. F. Bourne was secretary-treasurer of the company and was paid a salary of $6300. No other stockholders or relatives of Mrs. James W. Sloan either directly or indirectly received any compensation from the company.

15. That the Sloan Oil & Gas Co. prospered under the management of Mrs. James W. Sloan and the decisions she has made during her administration as president all seem to have been sound and have redounded to the benefit of the company, and that the sum of $10,800 annually paid to Mrs. James W. Sloan as president of the company, and as its active directing head, was a very reasonable compensation for the services performed.

16. That the salary of $10,800 paid to Mrs. James W. Sloan in 1945, as president of Sloan Oil & Gas Co., was reasonable and should be allowed as compensation for personal services actually rendered for the purpose of determining the excess profits credit carryback, and that the amount of said excess profits credit adjustment allowable for 1943 as an excess profits credit carryback from the year 1945 is $18,076.27.

17. That the parties hereto have entered into and filed a stipulation herein wherein it is agreed that if the Court finds for the plaintiff on its first cause of action, the amount of the judgment on said first cause of action to be entered would be $5,935.52, of which amount $5,053.92 represents overpayment of excess profits tax for the year 1942 and $881.60 represents overpayment of interest, and further agreeing that if the Court finds for plaintiff on the second cause of action, the amount of the judgment on the second cause of action would be $6,220.80 of which amount $5,582.01 represents overpayment of excess profits tax for the year 1943 and $638.79 represents overpayment of interest and further agreeing that if the court finds for plaintiff on the fourth cause of action, the amount of the judgment on plaintiff's fourth cause of action would be $6,179.63 representing the excess of the excess profits tax overpayment over the increase in income tax for 1943 resulting from the excess profits credit carryback from the year 1945 allowable as an unused excess profits adjustment, and the Court finds the facts to be as set out in such stipulation.

## Conclusions of Law

1. That the payments made to Mrs. James W. Sloan during the years 1942 and 1943 by the Sloan Oil & Gas Co. was salary for her personal services actually rendered.

2. That the payments made to Mrs. James W. Sloan during the years 1942 and 1943, when measured by the amount and quality of the services performed, with relation to the business of the Sloan Oil & Gas Co., were reasonable.

3. That plaintiff is entitled to deduct as a business expense the sum of $10,800 paid to Mrs. James W. Sloan in each of the years 1942 and 1943, as such payments are a reasonable allowance for compensation for personal services actually rendered.

4. That plaintiff had an unused excess profits credit adjustment allowable for 1943 as an excess profits credit carryback

from the year 1945, and that in calculating such credit, the salary of $10,800 paid to Mrs. James W. Sloan for the year 1945 as president of Sloan Oil & Gas Co. was reasonable and should be allowed as compensation for personal services actually rendered.